IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| **SCOTT CHERRY,** individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>*v.*<br><br>**OX CAR CARE, INC.**, a Delaware registered corporation,<br><br>*Defendant.* | Case No. 5:26-cv-00128<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Plaintiff Scott Cherry ("Plaintiff Cherry" or "Cherry") brings this Class Action Complaint and Demand for Jury Trial against Defendant Ox Car Care, Inc. ("Defendant" or "Ox Car Care") to stop the Defendant from violating the Telephone Consumer Protection Act ("TCPA") by placing pre-recorded telemarketing calls to consumers without consent. Plaintiff seeks injunctive and monetary relief for all persons injured by Defendant's conduct. Plaintiff Cherry, for this Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences and, as to all other matters, upon information and belief, including an investigation conducted by his attorneys.

## PARTIES

1. Plaintiff Cherry is a resident of Raleigh, North Carolina.

2. Defendant Ox Car Care is a corporation registered in Delaware and headquartered in Irvine, California. Defendant Ox Car Care conducts business throughout the US including in this District.

## JURISDICTION AND VENUE

3. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

4. This Court has personal jurisdiction over the Defendant and venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant does business in this District and the wrongful conduct giving rise to this case was directed into this District where the Plaintiff resides.

## INTRODUCTION

5. As the Supreme Court explained at the end of its term, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

6. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

7. By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

8. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

9. According to online robocall tracking service "YouMail," 4.1 billion robocalls were placed in December 2025 alone, at a rate of 132.6 million per day. www.robocallindex.com (last visited January 12, 2026).

10. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

11. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

12. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

**COMMON ALLEGATIONS**

13. Ox Car Care, Inc. sells extended vehicle warranty plans to consumers throughout the US.[3]

14. Ox Car Care generates business by placing calls to consumers, as per Plaintiff's experience.

15. Ox Car Care places calls using an artificial agent that can interact with consumers.

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls

[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf

[3] https://www.linkedin.com/company/ox-warranty-group/about/

16. Consumers have captured recordings from Ox Car Care that feature an artificial agent named Trinity, which is the same artificial agent that was used to call Plaintiff Cherry, and another featuring an artificial agent named Monica:



[4]



[5]

[4] https://lookup.robokiller.com/p/757-781-0818
[5] https://lookup.robokiller.com/p/757-522-2471



[6]



[7]

17. As will be shown in the Plaintiff's allegations, Ox Auto Guard is a name used by Ox Car Care when placing outbound sales calls to consumers using the artificial agent named Trinity.

18. Consumers have posted many complaints about unsolicited calls from Ox Car Care, including complaints about calls that were placed using an artificial agent:

---

[6] https://lookup.robokiller.com/p/972-619-7637
[7] https://lookup.robokiller.com/p/817-904-8513

Scott
Soda Springs, ID

Customer Service | Sales & Marketing

Reviewed Jan. 2, 2026

I keep getting scam calls from Ox Autocare. They use different numbers and call me up to 3 times a day. No legitimate company needs to spam call you everyday multiple times a day. It's the same recorded AI based message.[8]

**Initial Complaint**

**Date:** 10/15/2025

**Type:** Service or Repair Issues

**Status:** Answered

Every day, several different people text my phone from "Ox Car Care" for their "SPECIAL DEAL". I report them as spam and block them every time. Next time it's a different name, a different number, but the SAME EXACT message from "Ox Car Care". Whether it IS OX or not, makes no difference to me, that is up to OX CAR CARE to protect THEIR reputation if it is NOT them. Otherwise, they need to STOP HARRASSING ANYONE WITH A PHONE!!

**Business Response**

**Date:** 10/20/2025

Hello,
Thank you for reaching out. We have forwarded the phone number to our IT team and are working to have it removed from our system. We apologize for any inconvenience this may have caused.
Kindly,
Ox Car Care[9]

**Anonymous**

"Initially I thought they were great. Good start up process, seamless payments. Then, I had to cancel because of some health expenses. I went to cancel and it seemed simple, except after I followed instructions and canceled, they called me every day and left multiple unintelligible messages. I told several people that I had cancelled and still they kept calling. Not only did NO ONE respond to me about a refund at all, but they also harassed me. Do NOT get involved with them."

Posted 7 months ago[10]

---

[8] https://www.consumeraffairs.com/automotive/ox-car-care.html
[9] https://www.bbb.org/us/ca/irvine/profile/auto-warranty-plans/ox-car-care-1126-172015721/complaints?page=5
[10] https://www.reviews.io/company-reviews/store/ox-car-care

19. In response to these calls, Plaintiff Cherry brings forward this case seeking injunctive relief requiring the Defendant to cease from violating the TCPA, as well as an award of statutory damages to the members of the Class and costs.

**PLAINTIFF CHERRY'S ALLEGATIONS**

20. Plaintiff Cherry is the sole owner and user of his cell phone number ending in 8239.

21. On August 26, 2024, Plaintiff Cherry called Ox Car Care to inquire about a vehicle warranty.

22. During this call, Plaintiff Cherry purchased an extended vehicle warranty plan.

23. On September 24, 2024, Plaintiff Cherry requested an immediate cancellation of his extended vehicle warranty plan.

24. On October 22, 2024, Plaintiff Cherry received a confirmation that his extended vehicle warranty plan had been cancelled.

25. Plaintiff Cherry terminated his established business relationship with Ox Car Care when he terminated his warranty plan effective October 22, 2024.

26. Throughout 2025, Defendant Ox Car Care placed calls to Plaintiff Cherry's cell phone to solicit a new extended vehicle warranty plan.

27. Plaintiff Cherry answered calls and told Ox Car Care to stop calling on multiple occasions, but the calls continued.

28. For example, on September 27, 2025 at 12:38 PM, Plaintiff Cherry received an unsolicited call to his cell phone from 757-982-3163 displaying the caller ID OX CARE:



29. When Plaintiff Cherry answered this call, an employee identified the company name Ox Car Care and said she was calling about selling an extended vehicle warranty plan.

30. Plaintiff Cherry told the employee that he is not looking to purchase an extended vehicle warranty plan and told the employee to stop calling his cell phone number.

31. Despite this clear stop request, Plaintiff Cherry received additional calls from Defendant Ox Car Care from October 2025 to January 2026, including:

- December 23, 2025 at 7:56 PM from 757-781-0818 – not answered, but a voicemail from an artificial agent was left;
- December 24, 2025 at 3:47 PM from 757-781-0818 – not answered, but a voicemail from an artificial agent was left;
- December 26, 2025 at 7:56 PM from 757-781-0818 – not answered, but a voicemail from an artificial agent was left;
- December 27, 2025 at 2:03 PM from 757-781-0818 – not answered, but a voicemail from an artificial agent was left;
- December 28, 2025 at 3:55 PM from 757-781-0818 – not answered, but a voicemail from an artificial agent was left;
- December 29, 2025 at 4:41 PM from 757-781-0818 – not answered, but a voicemail from an artificial agent was left;
- December 30, 2025 at 1:42 PM from 757-781-0818 – not answered, but a voicemail from an artificial agent was left;
- December 31, 2025 at 10:58 AM from 757-781-0818 – not answered, but a voicemail from an artificial agent was left;
- January 1, 2026 at 2:35 PM from 757-781-0818 – not answered, but a voicemail from an artificial agent was left;
- January 2, 2026 at 1:49 PM from 757-781-0818 – not answered, but a voicemail from an artificial agent was left;
- January 3, 2026 at 1:20 PM from 757-781-0818 – not answered;
- January 5, 2026 at 10:48 AM from 757-937-7848 – not answered;
- January 5, 2026 at 6:48 PM from 757-937-7848 – not answered, but a voicemail from an artificial agent was left;

32. All of the voicemails that Plaintiff Cherry received featured the same artificial agent and identical wording, stating:

"Hi, my name is Trinity from Ox Auto Guard. We are following up your prior interest in auto warranty. If you are still in the market, please reach back to us at 844-299-0885. Thank you."

33. Plaintiff Cherry could tell that the voicemails are pre-recorded/artificial because they are identical in every way, including intonation, speech, wording, and length.

34. The 844-299-0885 referenced in each call is a phone number owned/operated by Defendant Ox Car Care:



[11]

35. The unauthorized solicitation calls that Plaintiff received from Defendant Ox Car Care have harmed Plaintiff Cherry in the form of annoyance, nuisance, and invasion of privacy, occupied his phone line, and disturbed the use and enjoyment of his phone.

36. The voicemails also took up space on Plaintiff's cell phone, and Plaintiff felt harassed by the calls he received from Ox Car Care after instructing the Defendant to stop calling.

37. Seeking redress for these injuries, Plaintiff Cherry, on behalf of himself and a Class of similarly situated individuals, brings this suit under the TCPA.

---

[11] https://oxcarcare.com/contacts.html

## CLASS ALLEGATIONS

38. Plaintiff Cherry brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the following Class:

> **<u>Pre-recorded/Artificial Voice No Consent Class</u>:** All persons in the United States who from four years prior to the filing of this action through class certification (1) the Defendant called on their cellular telephone number (2) using an artificial or pre-recorded voice.

39. The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendant have been fully and finally adjudicated and/or released. Plaintiff Cherry anticipates the need to amend the Class definition following appropriate discovery.

40. **Numerosity and Typicality**: On information and belief, there are hundreds, if not thousands of members of the Class such that joinder of all members is impracticable, and Plaintiff is a member of the Class.

41. **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

(a) Whether Defendant's conduct violated the TCPA;

(b) Whether Defendant placed pre-recorded/artificial voice message calls to Plaintiff and members of the Pre-recorded No Consent Class without first obtaining consent to make the calls;

(c) Whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct.

42. **Adequate Representation**: Plaintiff Cherry will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in class actions. Plaintiff Cherry has no interests antagonistic to those of the Class, and the Defendant has no defenses unique to Plaintiff. Plaintiff Cherry and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiff Cherry nor his counsel have any interest adverse to the Class.

43. **Appropriateness**: This class action is also appropriate for certification because the Defendant has acted or refused to act on grounds generally applicable to the Class and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Class uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff Cherry. Additionally, the damages suffered by individual members of the Class will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Class to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

## FIRST CLAIM FOR RELIEF
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Cherry and the Pre-Recorded No Consent Class)**

44. Plaintiff Cherry repeatshart and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

45. The Defendant transmitted unwanted telephone calls to Plaintiff Cherry and the other members of the Pre-recorded No Consent Class using a pre-recorded voice message.

46. These pre-recorded voice calls were made *en masse* without the prior express written consent of the Plaintiff and the other members of the Pre-recorded No Consent Class.

47. The Defendant has, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendant's conduct, Plaintiff and the other members of the Pre-recorded No Consent Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Class as defined above; appointing Plaintiff as the representative of the Class; and appointing his attorneys as Class Counsel;

b) An award of money damages and costs;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA;

d) An injunction requiring Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Class; and

e) Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Cherry requests a jury trial.

**SCOTT CHERRY**, individually and on behalf of all others similarly situated,

DATED this 3rd day of March, 2026.

By: /s/ *Ryan Duffy*
The Law Office of Ryan P. Duffy, PLLC
96 E. Catawba Street, Suite 6
Belmont, NC 28012
ryan@ryanpduffy.com
Telephone: (704) 741-9399

*Local Counsel for Plaintiff and the putative Class*

Avi R. Kaufman*
kaufman@kaufmanpa.com
KAUFMAN P.A.
237 S Dixie Hwy, Floor 4
Coral Gables, FL 33133
Telephone: (305) 469-5881

*Attorney for Plaintiff and the putative Class*

**Pro Hac Vice motion forthcoming*